IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PEDRO ENRIQUE PEREZ-VELEZ<br>**Plaintiff**<br>v.<br>P.R. TICKETS.COM, CORP.;<br>ATLETICOS DE SAN GERMAN 2022 INC.<br>**Defendants** | CIVIL NO. 23-1230(RAM) |

**OPINION AND ORDER**[1]

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendants P.R. Ticket.com, Corp. and Atléticos de San Germán 2022, Inc.'s (collectively, "Defendants") *Motion to Dismiss the Amended Complaint with Prejudice* (the "*Motion to Dismiss*"). (Docket No. 30). For the reasons discussed below, the Court hereby **DENIES** Defendants' *Motion to Dismiss*.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On September 5, 2023, Plaintiff Pedro Enrique Pérez-Vélez ("Plaintiff" or "Mr. Pérez") filed an *Amended Complaint* (the "*Complaint*") alleging P.R. Ticket.com ("PR Ticket") and Atléticos de San German 2022 Inc. (the "Atléticos") violated Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 1201 *et seq.*,

---

[1] Elizabeth VanKammen, a rising 2L at UVA Law, assisted in the preparation of this Opinion and Order.

(the "ADA"); as well as 28 C.F.R. §§ 36.302(f)(1)(ii)-(2), 36.504(a), 36.505; 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(ii), 12205, and 12188(a)(2), and; 29 U.S.C. § 794a. (Docket No. 27). Plaintiff claims that Defendants failed to: (1) adequately provide him—an individual with a disability—with tickets for accessible seating; (2) assist him in acquiring tickets for accessible seating; and (3) guide him to the location of accessible seats at the Arquelio Torres-Ramirez Coliseum (the "Coliseum"). Id. ¶¶ 1-5.

Mr. Pérez alleges that he has osteopenia, a condition that results in abnormal bone density, causing a risk of fracture when engaging in major life activities such as walking, standing, and bending. Id. ¶¶ 4(a)-(c). It also causes him pain and imbalance that requires him to use a cane or wheelchair. Id. In the *Complaint*, Plaintiff contends Defendants provide services open to the public as places of public accommodation under 42 U.S.C. § 1281. Id. ¶ 10. Plaintiff also alleges that he attempted to acquire accessible seating tickets from PR Ticket for an Atléticos game held at the Coliseum on July 25, 2022, but was unable to do so because, despite offering regular tickets for sale through the website, PR Ticket only offers accessible seating tickets for in-person purchases. Id. ¶¶ 13-14. To buy the accessible seating tickets, Mr. Pérez was required to "go before the game to buy the ticket, stand in line, and provide physical evidence of his

disability." Id. Upon arriving at the Coliseum on July 25, Plaintiff was unable to access the facility in his vehicle, as the handicapped entrance had been reserved by the Atléticos for VIP ticket holders. Id. ¶ 17. Instead, Mr. Pérez walked "a considerable distance, using his cane." Id.

After entering the facility, Plaintiff felt unsafe waiting in line for the ticket booth where he could acquire an accessible seating ticket, so he "decided to enter the [C]oliseum and try to find an accessible seat for himself." Id. ¶ 18. When he failed to find accessible seating, Mr. Pérez explained his disability to the Atléticos staff and requested an accessible seat. Id. He was informed that no seats—accessible or not—were available. Id. After continuing to walk up and down the stairs, all while experiencing a great deal of pain and physical exhaustion due to his condition, Plaintiff found "the person in charge at that time" and requested that he be provided with either accessible seating or simply a chair for the moment. Id. ¶ 20. In response to this request, the Atléticos staff member stated that "since the event was not a public event, they did not have to comply with the ADA." Id. As a result, Mr. Pérez was unable to watch the Atléticos game in the Coliseum on that day. Id.

On September 26, 2023, Defendants filed their *Motion to Dismiss*. (Docket No. 30). They contend that Plaintiff has failed "to establish the elements required for a viable ADA claim under

Title III." Id. at 1. First, Defendants aver that Plaintiff improperly alleges they are "operators" of the Coliseum, as defined under the ADA, since they are mere lessees of the space and would therefore not be liable. Id. at 2. Second, Defendants posit that PR Ticket's website is not a place of public accommodation. Id. Third, Defendants claim Plaintiff fails to plead facts demonstrating he made a specific, necessary, and reasonable request for Defendants to modify their policies. Id. at 30-31. Finally, Defendants dispute that Plaintiff's condition, osteopenia, is a recognized ADA disability and that Mr. Pérez alleged any facts demonstrating he is an individual with a disability as recognized under the ADA. Id. at 30.

On October 12, 2023, Plaintiff filed a *Motion in Opposition to Motion to Dismiss* ("*Opposition*") asserting that his *Amended Complaint* successfully pleaded facts that plausibly state his claim for relief under Title III of the ADA. (Docket No. 34). One month later, Defendants filed a *Reply in Support of Motion to Dismiss the Amended Complaint with Prejudice* ("*Reply*") (Docket No. 39). The *Reply* raises several new arguments supporting the *Motion to Dismiss*.[2] First, Defendants aver Plaintiff failed to make a pre-litigation request for accommodation as required by Title III of the ADA. (Docket No. 39 at 1). Second, they claim Plaintiff failed

---

[2] "New arguments, however, may not be made in reply briefs." United States v. Toth, 33 F.4th 1, 19 (1st Cir. 2022).

to "present evidence on whether the modifications he wants are reasonable or necessary." Id. at 2. Third, according to Defendants, Plaintiff failed to join an indispensable party, the Municipality of San German (the "Municipality"), insofar as they are the owner and lessor of the Coliseum. Id. Finally, Defendants reallege that Plaintiff has failed to demonstrate his osteopenia "significantly limit[s] a vital life activity such as walking and standing." Id.

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint that "fails to state a claim upon which relief can be granted." Under Rule 12(b)(6), a plaintiff must plead enough facts to state a claim that is "plausible" on its face, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level, […] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Further, a complaint will not stand if it offers only "naked assertion[s]" devoid of "further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). To determine whether a complaint has stated a plausible, non-speculative claim

for relief, courts must treat non-conclusory factual allegations as true. *See* Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013).

### III. DISCUSSION

#### A. Plaintiff has Pled Facts Plausibly Asserting He Has a Disability under the ADA

Pursuant to 42 U.S.C. § 12102(1)(A), an individual has a disability under the ADA if they have "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" When determining whether a plaintiff has such a disability, 29 C.F.R. § 1630.2(j)(1)(i)-(ii) instructs that:

> (i) The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard. (ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity **as compared to most people in the general population.** An impairment **need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.** Nonetheless, not every impairment will constitute a disability within the meaning of this section.

Id. (emphasis added). A plaintiff, therefore, need not show that they **cannot** perform a particular major life activity. Instead, the only requirement is that they allege facts sufficiently

demonstrating that, compared to most people in the general population, their performance of a major life activity is **substantially limited**.

Plaintiff has alleged that he has osteopenia, and that this condition creates difficulties and pain while walking, standing, and bending. (Docket No. 27 ¶¶ 4(a)-(c)). Although, as Defendants point out, Mr. Pérez does state he was able to walk all the way from his car to the entrance of the Coliseum and ventured up and down the stairs, his ability to do so is significantly limited compared to most people in the population, as is required by statute. Most people in the general population neither require a cane to assist them in walking, nor do they experience constant, severe pain when doing so. Although Defendants emphasize the similarities between the plaintiff's condition in Pinto v. Massapequa Public Schools, 820 F. Supp. 2d 404, 406 (E.D.N.Y. 2011) and Plaintiff's condition here, Plaintiff's *Opposition* is correct in stating that the Pinto plaintiff suffered from "milder limitations than what Plaintiff alleges here." (Docket Nos. 30 ¶¶ 107-110 and 39 ¶ 53). In Pinto, the plaintiff "experienced 'a little bit,' of difficulty walking, and suffered knee pain. Although [she] used a walker and/or a cane for a period of approximately three weeks following her 2002 surgery, she did not use either of these aids thereafter." Pinto, 820 F. Supp. 2d at 406. In contrast, Plaintiff "must use a cane or wheelchair for

mobility and struggles with stairs," thereby demonstrating a substantial impairment in satisfaction of the ADA definition of "disability." (Docket No. 34 at 5).

### B. Plaintiff Included the Appropriate Parties in His *Complaint*

To assert a claim under Title III of the ADA, a plaintiff must also allege that the defendant "is a private entity that owns, leases, or operates a place of public accommodation." Sanchez v. ACAA, 247 F. Supp. 2d 61, 67 (D.P.R. 2003). Defendants argue that (1) PR Ticket is not a place of public accommodation because it is a website, and; (2) Atléticos does not own, operate, or control the Coliseum. (Docket No. 30 ¶¶ 21, 43). Therefore, Defendants argue, Plaintiff has failed to identify all necessary parties by not including the Municipality among the named parties, as it is the owner and lessor of the Coliseum. Id. ¶ 77. Defendants are incorrect.

#### i. The Scope of the Claim

Plaintiff has filed a complaint seeking injunctive and declaratory relief against PR Ticket and the Atléticos for their "discrimination in regard to the policies of access to goods and services offered, along with the lack of applicable standards in the sale of tickets for accessible seating." (Docket No. 27 at 1). Plaintiff alleges that Defendants have failed to comply with the

relevant standards established under 28 C.F.R. § 36.302(f)(1)(ii)-(2). These standards require:

> A public accommodation that sells tickets for a single event or series of events shall modify its policies, practices, or procedures to ensure that individuals with disabilities have an **equal opportunity to purchase tickets** for accessible seating— (A) During the same hours; (B) During the same stages of ticket sales, including, but not limited to, pre-sales, promotions, lotteries, wait-lists, and general sales; (C) **Through the same methods of distribution;** (D) In the same types and numbers of ticketing sales outlets, including telephone service, in-person ticket sales at the facility, or third-party ticketing services, as other patrons; and (E) Under the same terms and conditions as other tickets sold for the same event or series of events.

And;

> A public accommodation that sells or distributes tickets for a single event or series of events **shall, upon inquiry**— (i) Inform individuals with disabilities, their companions, and third parties purchasing tickets for accessible seating on behalf of individuals with disabilities of the locations of all unsold or otherwise available accessible seating for any ticketed event or events at the facility; (ii) **Identify and describe** the features of available accessible seating in enough detail to reasonably permit an individual with a disability to assess independently whether a given accessible seating location meets his or her accessibility needs; and (iii) **Provide materials**, such as seating maps, plans, brochures, pricing charts, or other information, **that identify accessible seating and information relevant thereto** with the same text or visual representations as other seats, if such materials are provided to the general public.

28 C.F.R. § 36.302(f)(1)(ii)-(2).

Mr. Pérez's claims are confined only to policies implemented by both PR Ticket and the Atléticos having to do with ticketing and the process of purchasing tickets to attend games hosted by the Atléticos in the Coliseum. (Docket No. 27 ¶¶ 33-35). He does not make any allegations regarding architectural barriers impeding his access to events at the Coliseum, instead limiting his claims to policies and logistics within the control of the Atléticos and PR Ticket. Id. ¶¶ 22-25.

    ii.  PR Ticket

The First Circuit has held that a website can be a "place of public accommodation" within the meaning of the ADA. *See* Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, 37 F.3d 12, 19 (1st Cir. 1994) (finding that "the phrase is not limited to actual physical structures"). Instead, so long as a website "falls within a general category listed under the ADA" the courts can find that a website constitutes a place of public accommodation. Nat'l Ass'n of the Deaf v. Netflix, Inc., 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012). To find otherwise, the First Circuit has stated, "would be irrational," resulting in a world where "persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services

over the telephone or by mail are not. Congress could not have intended such an absurd result." Carparts, 37 F.3d at 19.

The relevant category of public accommodation under the ADA is 42 U.S.C. § 12181 (7)(E): "a bakery, grocery store, clothing store, hardware store, shopping center, or **other sales** or rental establishment[.]" Id. "While the list of categories is exhaustive, the representative examples of facilities within each category are not." 28 C.F.R. § 36.104. PR Ticket is the owner or operator of a website "whose main activity is the sale of tickets for different events in Puerto Rico." (Docket No. 27 ¶ 2a). This activity makes the website simply another type of sales establishment that, while not specifically mentioned in the listed examples, does fall within one of the twelve categories under the ADA. As such, PR Ticket's website is a place of public accommodation and is thereby bound by the rules and regulations of the ADA.

### iii. Atléticos

When determining whether someone is an operator, courts should consider:

> (a) the defendant is in a position of authority; (b) within the ambit of this authority the defendant has both the power and discretion to perform potentially discriminatory acts; and (c) the discriminatory acts are the result of the exercise of the individual's own discretion, as opposed to the implementation of institutional policy or the mandates of superiors.

J.S.H. v. Newton, 654 F. Supp. 3d 7, 19 (D. Mass. 2023) (citing Guckenberger v. Boston Univ., 957 F. Supp. 306, 322-33 (D. Mass. 1997); Howe v. Hull, 874 F. Supp. 779, 788 (N.D. Ohio 1994)). Another district court has defined an "operator" for the purposes of the ADA as an individual with "an active and significant degree of control over the accessrelated [sic] aspects of the facility in question." Lemmons v. Ace Hardware Corp., 2014 WL 3107842, at *6 (N.D. Ca. 2014). The Fifth Circuit has held that an operator, in the context of a franchising agreement, must "specifically contro[l] the modification of the franchises to improve their accessibility to the disabled." Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1066 (5th Cir. 1995).

In the present instance, the Atléticos claim that, since it signed a lease and does not specifically control the modification of the Coliseum's facilities, it cannot be considered an operator. (Docket No. 30 ¶ 64). However, the instant Plaintiff has not requested any physical modification be made to the physical space in question. What Plaintiff requested of Atléticos—that he be shown where accessible seats were located, or else provided with a chair for a moment of respite after searching for such seating on his own—was within the specific control of Atléticos' personnel to achieve. (Docket No. 27 ¶¶ 18-20). Moreover, per the *Complaint*, the individual in charge of the operations on June 25, 2022 was able to provide Plaintiff with assistance locating the accessible

seating within the arena. Id. The Atléticos may not have been able to physically modify the facilities of the Coliseum, but the organization is nonetheless able to modify the policies they implemented while holding an event there.

### iv. The Municipality

Although Defendants try to use their status as lessee as a defense, the language of the lease imposes on Atléticos a duty to care for the "order and safety of the people in the [complex]" when it is using the facilities for games or practices. (Docket No. 32-1 at 3). While this lease retains to the lessor (the Municipality) the right to make physical modifications to the property as the freehold owner, the same also requires that the lessee (the Atléticos) "comply with State Laws and Regulations and Municipal Ordinances and Regulations that regulate the use of the premises and the activities therein." (Docket No. 32-1 at 1, 6). Similar language appears in the franchise agreement between Ace Hardware and the franchisee in Lemmons, 2014 WL 3107842, at *7 ("under the franchising agreement, Ace requires Berkeley Hardware to abide by all federal and state laws, including those pertaining to disability access."[3]). There, the District Court held that the

---

[3] The *Certified English Translation* of the lease of the Arquelio Torres Ramírez Complex to the Atléticos by the City of San Germán (the "Lease") states: "THE LESSEE agrees to comply with State Laws and Regulations and Municipal Ordinances and Regulations that regulate the use of the premises and the activities therein." (Docket No. 32-1 at 4). Although the Lease does not explicitly require compliance with rules and regulations pertaining to disability access, this language can be understood to apply those rules to the lessees, the Atléticos.

inclusion of such terms failed to grant the **franchisor** the "'specific control' necessary to impose liability on it." Id. Similarly interpreting the language in the present lease, the Municipality lacks the "specific control" necessary to impose liability for failure to comply with ADA ticketing and operating requirements. Contrary to Defendants' arguments, Plaintiff has not failed to include an indispensable party and has instead correctly identified Atléticos as the party in specific control over the requested modifications to ticketing and operations that would enable accessibility.

### C. Plaintiff Adequately Plead that Defendants Discriminated Against him because of his Disability

A plaintiff must also establish that:

> the defendant has a discriminatory policy or practice in effect; that he (the plaintiff requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods; that the requested modification—or a modification like it—was necessary to afford that access; and that the defendant nonetheless refused to modify the policy or practice.

Dudley v. Hannaford Bros. Co., 333 F.3d 299, 307 (1st Cir. 2003) (citations omitted). The modifications may include changes in "policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications

would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]" 42 U.S.C. § 12182(2)(A)(ii). The requested modification must be made prior to instituting an action under the ADA, providing the would-be defendant with the opportunity to correct their actions. *See* Betancourt Colon v. Puerto Rico Convention Ctr. Dist. Auth., 2023 WL 5163320, at *4 (D.P.R. 2023). Defendants misinterpret Dudley's statement that "Title III offers no incentive for an individual to conceal his or her disability. The operative provision. . . requires a person with a disability to request a reasonable and necessary modification, **thereby** informing the operator of a public accommodation about the disability." 333 F.3d at 309 (emphasis added); (Docket No. 30 ¶ 96) (taking issue with Plaintiff's failure to allege that he specifically informed Defendants he suffered from osteopenia). It is through the mere act of requesting an accommodation that a plaintiff informs the operator of a public accommodation of their disability.

While it is true that "defendants cannot have discriminated against [a plaintiff] solely on the *basis* of a disability if they knew nothing about it," the request for an accommodation serves to provide knowledge of such a disability. Hendricks v. Stepp, 2009 WL 2224524, at *5 (D.S.C. 2009), *aff'd*, 360 F. App'x 447 (4th Cir. 2010) (emphasis in original). Courts have granted motions to dismiss for failure to allege facts demonstrating the defendants

had knowledge of a disability under Title III claims where the plaintiff's communications with the defendant "contain[ed] no specific or general requests for accommodation," and failed to substantiate the existence of their disability when requested to do so by the defendant. Shaywitz v. American Bd. of Psychiatry and Neurology, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012). Additionally, Title III claims are dismissed when the plaintiffs failed to allege what a reasonable accommodation would have been or that they informed the defendants that such an accommodation would be needed. See A.F. by & through Feola v. Starbucks Corp., 2018 WL 1161385, at *5 (D.Or. 2018) (noting that a plaintiff with a disability alleged facts showing only that he was asked by an employee to leave a store without requesting a reasonable accommodation).

### i. Plaintiff Requested a Reasonable Accommodation

PR Ticket offers the purchase of regular tickets through the website and in person but only offers the sale of accessible seating tickets in person. (Docket No. 27 ¶ 23). After the failed attempt to locate accessible seating to watch the game on June 25, 2022, Mr. Pérez proceeded to contact PR Ticket on two occasions. First, he contacted them on August 2, 2022, and again on August 10, 2022, requesting that he be allowed to purchase an accessible seating ticket from PR Ticket without having to stand in line to purchase them because having to do so would cause him great pain. Id. ¶¶ 28, 29. In doing so, the Plaintiff informed Defendant PR

Ticket of his disability. This course of action constitutes an adequate statement of facts showing a reasonable accommodation was requested by Mr. Pérez of PR Ticket prior to the lawsuit.

When Plaintiff attempted to attend the event at the Coliseum on June 25, 2022, he alleges the Atléticos staff told him, in response to his request that he be provided an accessible seat due to his mobility issues, "If you find any chair, you can use it." (Docket No. 27 ¶ 18). After subsequently attempting to locate an accessible seat on his own, Plaintiff proceeded to ask "the person in charge at that time" to provide him with "some kind of reasonable accommodation that could be given, due to the health conditions of Mr. Pedro Pérez, even a chair was requested so that he could sit at that moment[.]" (Docket No. 27 ¶ 20). While the statement regarding the request for "some kind of reasonable accommodation" does appear to amount to no more than a threadbare recitation, the specific request for a chair to sit in momentarily provides sufficient facts to conclude the staff of Atléticos was adequately informed of Plaintiff's disability and a specific accommodation request. This request was made prior to the present litigation and therefore satisfies the requirement under Title III of the ADA.

Defendants do not argue that the accommodations requested by Mr. Pérez are unreasonable. Instead, they only claim that Plaintiff failed to allege facts stating the accommodations were reasonable.

(Docket No. 26 ¶ 101). At the pleading stage, a plaintiff need only:

> [E]stablish[] that he requested a specific reasonable accommodation to a policy which, if granted, would afford him access to the desired goods or services. Once the plaintiff meets that burden of showing that a modification is **reasonable in a general sense**, the defendant must make the modification unless he can show that such a change would work a fundamental alteration.

Massachusetts v. E*Trade Access, Inc., 464 F. Supp. 2d 52, 58 (D. Mass. 2006) (emphasis added). Districts may assess the general reasonability of a requested accommodation without referring to the evidence provided by a plaintiff. *See* id. at 59 (finding that modification of an ATM company's policies, thereby allowing blind customers to use accessible ATMs without a surcharge, is generally reasonable).

Mr. Pérez's request to have the option to purchase accessible seating tickets without having to wait in line at a ticket booth is generally reasonable, especially since PR Ticket makes general seating tickets available for purchase online currently. (Docket No. 27 ¶ 23). Defendants have failed to present any evidence that such an accommodation would "work a fundamental alteration." E*Trade, 464 F. Supp. 2d at 58. Defendants are correct in highlighting that a place of public accommodation is required to make a reasonable modification "to allow the individual to exchange his ticket for one to an accessible seat in a comparable location

**if accessible seating is vacant at the time the individual presents the ticket.**" 28 U.S.C. § 36.302(f)(7)(ii) (emphasis added). As such, assuming there really were no seats, regular or accessible, available at the time Plaintiff made his request, the Atléticos staff was not obligated to provide him with a seat. (Docket No. 27 ¶ 18). When Mr. Pérez asked for a chair so he might sit for a moment's respite from the pain of standing due to his osteopenia, however, this constituted a generally reasonable request that could have, and should have, been provided to him. Id. ¶ 20. Instead, Plaintiff was told that the Atléticos staff believed "they did not have to comply with the ADA." Id. These facts suffice to show Plaintiff made a reasonable and necessary pre-litigation request for reasonable accommodations and was denied those accommodations by Defendants, therefore satisfying the requirements under Title III of the ADA.

## IV. CONCLUSION

In light of the above, Defendants' *Motion to Dismiss the Amended Complaint with Prejudice* at Docket No. 30 is hereby **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of July 2024.

                                    s/Raúl M. Arias-Marxuach
                                    UNITED STATES DISTRICT JUDGE